IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE TOWERS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF GOTHENBURG,<br><br>Defendant. | **8:25CV412**<br><br><br>**MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF CITY'S DENIAL OF APPLICATION FOR SPECIAL USE PERMIT** |

Plaintiff The Towers, LLC, (The Towers) seeks judicial review of "Defendant City of Gothenburg's [(the City's)] decision denying Plaintiff's application for a special use permit to site a new telecommunications tower." Filing 17 at 1. The Towers "moves the Court for an order reversing" the denial and "also requests an order directing [the City] to grant all necessary permits for construction and operation of the facilities proposed in [The Towers's] application." Filing 17 at 1. In response, Gothenburg filed a motion to "affirm[] the City's decision to deny [The Towers's] application for a special use permit." Filing 19 at 1. For the following reasons, the Court vacates and remands the City's decision to deny The Towers's application.

## I.  INTRODUCTION

### A.  Procedural Background

The Towers partnered with Verizon Wireless in the hopes of constructing a "wireless telecommunications facility" (cell tower) in Gothenburg, Nebraska. Filing 16 at 2, 4 (AR 1, 3) (calling the facility the "NE Gothenburg cell tower" in the application for special use permit). Accordingly, The Towers applied for a special use permit with Gothenburg to construct the cell tower. Filing 16 at 2 (AR 1). The City Clerk gave notice that the Gothenburg Planning & Zoning Commission would conduct a public hearing on the application on February 11, 2025. Filing 16 at 20 (AR 19). The Planning & Zoning Commission held a hearing on February 11, 2025, to consider

1

the application. Filing 16 at 50 (AR 49). Three members voted in favor of recommending approval of the application to the City Council, and four members voted to recommend denial of the application. Filing 16 at 50 (AR 49). The City Clerk gave notice that the Gothenburg Mayor and City Council would conduct a public hearing on the application on May 20, 2025. Filing 16 at 55 (AR 54). The City Council met and considered the application on May 20, 2025. Filing 16 at 56 (AR 55). The City Council voted unanimously to deny the application. Filing 16 at 57 (AR 56). On June 6, 2025, the Building and Facilities Director of the City of Gothenburg, Shane Gruber, sent The Towers a letter. Filing 16 at 290 (AR 289). The letter communicated that "the City Council denied your request for special use." Filing 16 at 290 (AR 289). The letter also stated that Gruber "enclosed a copy of the Council minutes for [The Towers's] files setting forth the reason for the denial." Filing 16 at 290 (AR 289).

The Towers filed this action on June 20, 2025. Filing 1 at 9–10. The Complaint asserted two claims. Filing 1 at 9, 13. The Towers's first claim was for lack of substantial evidence in a written record under 47 U.S.C. § 332(c)(7)(B). Filing 1 at 9. The Towers's second claim was for effective prohibition under 47 U.S.C. § 332(c)(7)(B). Filing 1 at 13. On January 9, 2026, The Towers filed a motion for reversal and a brief supporting its motion. Filing 17; Filing 18. In doing so, The Towers withdrew its claim for effective prohibition. Filing 18 at 20 n.3. On February 9, 2026, The City filed a motion to affirm and a brief supporting that motion. Filing 19; Filing 20. On February 23, 2026, The Towers filed a reply brief. Filing 21.

### B. Factual Background

"Among the limitations imposed by the [Telecommunications Act (TCA)] is the procedural requirement that a locality's decision denying permission to construct a cellular tower be 'in writing and supported by substantial evidence contained in a written record.'" *NE Colo. Cellular, Inc. v. Seward Cnty. Bd. of Comm'rs*, 4:24-CV-3080, 2025 WL 1381508, at *3 (D. Neb. May 13,

2025). However, "[a] meaningful review of a denial is not limited to the facts specifically offered in a written decision." *Id.* at \*4 (citing *S.W. Bell Mobile Syst., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001), *abrogated on other grounds by T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 308 (2015)). Rather, "[t]he 'written record' requirement exists to enable parties adversely affected by a locality's decision to efficiently and effectively seek judicial review, and to facilitate such review by courts." *Id.* "[T]hose purposes are served by consideration of the meeting transcript." *Id.* (citing *City of Roswell*, 574 U.S. at 300). They are likewise served by consideration of the administrative record created contemporaneously with the denial, which may provide the reasons "in such a manner that is clear enough and prompt enough to enable judicial review." *City of Roswell*, 574 U.S. at 307. The Court therefore incorporates factual background contained in the Administrative Record.

### 1. The City Council Meeting

The Gothenburg City Council met on May 20, 2025, to consider the application for special use permit. Filing 16 at 57 (AR 56). Woody Krog, a representative of The Towers, spoke in favor of a special use permit. Filing 16 at 57, 296 (AR 56, 295). Krog stated that "[a]s a build-to-suit partner with Verizon Wireless, The Towers LLC is proposing to construct a wireless telecommunications facility in an ag zone district in the city's extraterritorial jurisdiction." Filing 16 at 296 (AR 295). Krog explained that "[t]he tower will be 105 feet tall with a lightning rod on top and will be of a monopole design." Filing 16 at 297 (AR 296). Krog stated *inter alia* that he did not expect surrounding property values to depreciate and that he did not expect the character of the district to be changed negatively. Filing 16 at 297 (AR 296). Krog was then asked questions by councilmembers. Filing 16 at 299–300 (AR 298–299).

Four individuals spoke in support of denying the application for special use permit. Randy Isackson stated that "[w]hat is wrong is this is the wrong location." Filing 16 at 303 (AR 302).

3

Isackson stated further that "[y]ou guys talk about a walking trail. You know you're going to be able to see that tower from clear down by Sue Ostergard's all the way up there. So is that going to be the high point of the walking trail, let's go up and see the monument. I'm sorry, guys. This is ugly." Filing 16 at 303 (AR 302). Isackson also stated that "[t]his was going to be our new development area. This was going to be where people are going to bring their kids, raise families, walk their dogs, ride their bicycles. Now what are we going to do?" Filing 16 at 303 (AR 302).

Carmen Ackerman also spoke in favor of denying the application. Ackerman stated,

I want to express my concern about placing a tower within close proximity of our homes. A lot of people who live up here, particularly in an area that serves as a peaceful transition between a growing neighborhood and surrounding farmland. This is a place where we value open skies, quiet evenings, and a connection to nature that you can enjoy in a place like Gothenburg. A cell tower would fundamentally change the character of this landscape. Our city is planning a walking and biking trail nearby, a vision that promotes health and community and outdoor recreation, and a cell tower in such close proximity could and would certainly undermine that experience.

Filing 16 at 304–05 (AR 303–04). Ackerman stated further,

Beyond aesthetics, there are real economic implications. A peer-reviewed study published in Land Economics found that homes within 1,500 feet of a cell tower experience property value declines of up to 20 percent, particularly when the tower is visible from the home. This isn't just theory. It's a direct financial concern for homeowners like myself and others who are here tonight.

Filing 16 at 305 (AR 304).

Scott Bahe stated that he had "a lot of concerns with the aesthetics of [the cell tower]." Filing 16 at 306 (AR 305). Brynn McPheeters stated that she "echo[ed] all of the concerns that were mentioned by [her] neighbors." Filing 16 at 307 (AR 306).

The City Attorney Mike Bacon apprised the councilmembers that "in order to grant a special use permit, [the councilmembers] have to follow the code of ordinances" and that a councilmember must make "seven findings" pursuant to the code of ordinances to "vote in the affirmative to pass or grant the special use permit." Filing 16 at 308–09 (AR 307–08). Bacon then

4

provided each of the seven requirements. Filing 16 at 309 (AR 308). Each of the seven requirements, along with other local provisions governing zoning, are found in Chapter 152 of the Gothenburg, NE Code of Ordinances. GOTHENBURG, NEB., ZONING ORDINANCES § 152.001 *et seq.*, https://ci.gothenburg.ne.us/pdf/Zoning.pdf.[1] The City Council then voted unanimously to deny the application for special use permit. Filing 16 at 310 (AR 309).

    2. *Minutes of the City Council Meeting Transmitted with the Written Decision to Deny*

The Building and Facilities Director of the City of Gothenburg, Shane Gruber, sent The Towers a letter on June 6, 2025. Filing 16 at 290 (AR 289). This letter stated that "the City Council denied your request for special use." Filing 16 at 290 (AR 289). "[Gruber] enclosed a copy of the Council minutes for [The Towers's] files setting forth the reason for the denial." Filing 16 at 290 (AR 289). The minutes explain that Krog spoke in favor of the application. Filing 16 at 291 (AR 290). The minutes note that "Randy Isackson, Carmen Ackerman, Scott Bahe, and Brynn McPheeters spoke against issued [sic] the special use permit for various reasons of visual of future walking and biking trail, the tower will change land values, health concerns." Filing 16 at 291 (AR 290). The minutes also state that "City Attorney Mike Bacon advised council that a special use permit can only be permitted if meets [sic] the seven criteria listed in 152.076 of [the] city code." Filing 16 at 291 (AR 290). The minutes then record the unanimous vote to deny the application. Filing 16 at 291 (AR 290). The minutes do not explain or detail any positions taken by councilmembers during the May 20, 2025, meeting. Filing 16 at 290–91 (AR 289–90).

---

[1] The Court cites to provisions contained in the Gothenburg, NE Code of Ordinances where relevant as "Gothenburg Zoning Ordinance" and the applicable section (*e.g.*, Gothenburg Zoning Ordinance § 152.076(C)).

## II. LEGAL ANALYSIS

### A. Standard of Review

The TCA states, in pertinent part, that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "In order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or reasons why the locality denied the application." *City of Roswell*, 574 U.S. at 300. While "localities must provide reasons when they deny cell phone tower siting applications," the Supreme Court has "stress[ed], however, that these reasons need not be elaborate or even sophisticated, but rather, as discussed below, simply clear enough to enable judicial review." *Id.* at 302.

"The statutory phrase 'substantial evidence' is a 'term of art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court.'" *Id.* at 301 (quoting *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)). "There is no reason discernible from the text of [the TCA] to think that Congress meant to use the phrase in a different way." *Id.* (citing *FAA v. Cooper*, 566 U.S. 284, 292 (2012)). According to the Eighth Circuit Court of Appeals, "The TCA's 'substantial evidence' requirement is 'directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements.'" *Sprint Spectrum, L.P. v. Platte Cnty.*, 578 F.3d 727, 733 (8th Cir. 2009) (quoting *VoiceStream Minneapolis, Inc. v. St. Croix Cnty.*, 342 F.3d 818, 830 (7th Cir. 2003)). "Substantial evidence requires such relevant evidence, more than a scintilla but not necessarily a preponderance, that a reasonable mind might accept as adequate to support a conclusion." *Seward Cnty. Bd. of Comm'rs*, 2025 WL 1381508, at *3 (citing *Sprint Spectrum, L.P.*, 578 F.3d at 733). The Court cannot "substitute its own determination for that of the administrative fact-finder, even if the Court believes that the fact-

finder is clearly wrong." *Id.* (citing *Smith Commc'ns, LLC v. Washington Cnty.*, 785 F.3d 1253, 1259 (8th Cir. 2015)). "The standard is not demanding—it is essentially deferential." *Id.* (citing *Sprint Spectrum, L.P.*, 578 F.3d at 733; *NE Colo. Cellular, Inc. v. City of N. Platte*, 764 F.3d 929, 937 (8th Cir. 2014)); *Sprint Spectrum, L.P.*, 578 F.3d at 734 ("[T]he substantial evidence standard is 'essentially deferential.'" (quoting *MetroPCS, Inc. v. City & Cnty. of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005))); *USCOC of Greater Mo. v. City of Ferguson*, 583 F.3d 1035, 1042 (8th Cir. 2009).

### B. The Parties' Arguments

The Towers makes five primary arguments in its initial brief. First, The Towers argues that the denial cannot meet the substantial evidence standard because "the City's written decision—the minutes—contains no 'reasons' or 'explanation' at all." Filing 18 at 12 (emphasis omitted). In other words, The Towers maintains that "[t]he substantial-evidence standard requires a local government to 'provide reasons' and 'articulate a satisfactory explanation of its action,'" but, while the minutes "note that Woody Krog spoke in support of The Towers's application and that four members of the public 'spoke against' the application," the written decision did not provide reasons or an explanation relating to the Council's decision. Filing 18 at 12–13. Second, The Towers maintains that the objectors' statements on the "visual of future walking and biking trail," change in land values, and health concerns—even if they constitute reasons for the City's denial— are not supported by substantial evidence. Filing 18 at 13–19. Third, The Towers asserts that the City "gave no consideration" to evidence submitted by The Towers, and that "[b]y ignoring evidence it didn't like, without explanation, the city failed the substantial evidence test." Filing 18 at 17, 19, 21. Fourth, The Towers argues that the City is bound by—and limited to—what its written decision actually says" and that "[p]ost-hoc rationales cannot serve as substantial evidence." Filing 18 at 21–22 (internal quotation marks omitted) (quoting *USOC of Greater Iowa,*

7

*Inc. v. City of Bellevue*, 279 F. Supp. 2d 1080, 1087 (D. Neb. 2003)). Finally, The Towers argues that the Court should issue the necessary permits as a remedy. Filing 18 at 20–26.

The City makes three primary arguments in its response brief. First, the City argues that the minutes that accompanied the written denial fulfill the City's requirement to provide its written reasons for denial. Filing 20 at 6. Second, the City maintains that the minutes referred to four reasons for the denial—"aesthetic concerns," "harm to surrounding land values," "compatibility with the use and character of the district," and the "community's health"—and that "[t]hree of the four reasons find substantial support in the written record." Filing 20 at 10–11. Third, the City asserts that, in the alternative to affirming the City's decision, the appropriate remedy is remand. Filing 20 at 17.

In reply, The Towers reasserts its argument that the City provided only the reasons suggested by "parties or public commenters" and did not provide its own reasons for denying the application. Filing 21 at 4. The Towers also reasserts its argument that the reasons provided by commenters are not supported by substantial evidence. Filing 21 at 6–7. Finally, The Towers's reply maintains that the Court should not remand the matter but issue the necessary permits. Filing 21 at 13–14.

### C. Discussion

The TCA "generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities like cell phone towers, but imposes 'specific limitations' on that authority." *City of Roswell*, 574 U.S. at 300 (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)). "One of those limitations is that any decision to deny a request to build a tower 'shall be in writing and supported by substantial evidence contained in a written record.'" *Id.* (quoting 47 U.S.C. § 332(c)(7)(B)).

1.  *The City Did Not Give Reasons for Denial*

The Court must first determine whether the City complied with its obligation to give written reasons for denial. *Id.* at 302 ("[T]he statutory text and structure, and the concepts that Congress imported into the statutory framework, all point clearly toward the conclusion that localities must provide reasons when they deny cell phone tower siting applications."). The TCA does not require a locality's written reasons to appear in a particular document. *Id.* at 303 ("[W]e can locate in the [TCA] no command—either explicit or implicit—that localities must provide those reasons in a specific document."). To meet its TCA obligation, the locality must only state its reasons "clearly enough to enable judicial review." *Id.* at 302. The Supreme Court has observed that a locality can use meeting minutes to comply with its TCA obligation so long as they are sufficiently detailed. *See id.* at 303 ("[A] locality may rely on detailed meeting minutes as it did here. . . .").

The Building and Facilities Director of the City of Gothenburg, Shane Gruber, "enclosed a copy of the Council minutes for [The Towers's] files setting forth the reason for the denial." Filing 16 at 290 (AR 289). The minutes stated that four individuals gave the Council reasons why the application should be denied. Filing 16 at 291 (AR 290). The citizens' positions recorded in the minutes were "reasons of visual of future walking and biking trail, the tower will change land values, [and] health concerns." Filing 16 at 291 (AR 290).

While the Supreme Court has observed that "a locality may rely on detailed meeting minutes" to comply with its obligation to give written reasons for the application's denial, the meeting minutes in this case are not adequate to "enable judicial review." *City of Roswell*, 574 U.S. at 303 (explaining that a locality must offer reasons for denial that are "clear enough to enable judicial review"). First, the Council's reasons for denial are not set out in the minutes' text. Filing 16 at 291–92 (AR 290–91). The minutes only provide the reasons offered by Randy Isackson,

Carmen Ackerman, Scott Bahe, and Brynn McPheeters. Filing 16 at 291 (AR 290). No reasons for denying the application are attributed to councilmembers, and the Court therefore has no reasons contained in the minutes' text that enable judicial review of the City's decision. Filing 16 at 291–92 (AR 290–91).

Second, the Council did not adequately adopt the reasons offered by the citizens as its own reasons for denial in the letter providing the minutes. The City's letter was sent by Gothenburg's Building and Facilities Director—not the Council—and did not state that the reasons offered by the citizens were the Council's own reasons for denial. Filing 16 at 290 (AR 289). Without the councilmembers stating that each of the citizens' individual reasons were adopted by the Council, or a written communication outlining the reasons, the Court can only infer that the citizens' reasons were those reasons relied on by the Council. The Court has no basis for making this inference. Just because a citizen testified at a council meeting does not mean a majority of the council—or any council member for that matter—agreed with it.[2]

What precludes judicial review in this case is the fact that the locality (*i.e.*, the decisionmakers) have not articulated why the application for special use permit was denied. Filing 16 at 290–92 (AR 289–91). The minutes were not detailed with the Council's reasons, and the City was not clear in its written decision that it was adopting those reasons provided by the four

---

[2] The Court sees this situation as somewhat akin to the notion that legislative history, in the form of testimony from members of the public or special interest groups in front of a legislative body, can be relied upon to determine the meaning and purpose of an enacted law. It is the view of this Court that legislative history in the form of hearing testimony generally constitutes the view of those who provide the testimony, and nothing more. Such testimony, without more, does not generally provide evidence that a Court should rely upon as to why the law was passed or what the statutory text means. *See Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 481 (2017) (saying "excerpts from committee hearings and scattered floor statements by individual lawmakers" are "'among the least illuminating forms of legislative history.'" (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017)); *Minn. Licensed Prac. Nurses Ass'n v. NLRB*, 406 F.3d 1020, 1024 (8th Cir. 2005) ("The Supreme Court has given less emphasis to legislative history in recent years, recognizing that it is frequently an unreliable indicator of congressional intent.").

individuals in the meeting. Filing 16 at 290–92 (AR 289–91). The City failed to comply with its obligation to give written reasons for the denial of the special use application.

2.      *Remand is the Proper Remedy*

The Court considers whether the proper remedy is issuance of the requested permits or remand. Filing 17 at 1 (requesting the Court grant "all necessary permits for construction and operation of the facilities proposed in The Towers' application"); Filing 20 at 1 (arguing that the Court should remand for further proceedings). "The TCA does not specify a remedy when a locality denies a permit contrary to the TCA's requirements." *Seward Cnty. Bd. of Comm'rs*, 2025 WL 1381508, at *5 (citing 47 U.S.C. § 332(c)(7)(B)(v); *Smith Comm'n, LLC v. Washington Cnty.*, No. 13-cv-5152, 2014 WL 2450067, at *6 (W.D. Ark. June 2, 2024), *aff'd*, 785 F.3d 1253 (8th Cir. 2015)). Thus, a court "may issue an injunction compelling the locality to issue the requested permit." *Seward Cnty. Bd. of Comm'rs*, 2025 WL 1381508, at *5 (citing *Nat'l Tower, LLC v. Plainville Zoning Bd. of App.*, 297 F.3d 14, 22 (1st Cir. 2002)). Alternatively, the court can remand the matter. *Id.* (citing *City of Bellevue*, 279 F. Supp. 2d at 1088; *Cellco P'ship v. City of Elkhart Bd. of Zoning App.*, No. 3:23-cv-913, 2025 WL 428415, at *4 (N.D. Ind. Feb. 7, 2025)).

In *City of Roswell*, the Supreme Court stated that "[t]he statutory phrase 'substantial evidence' is a 'term or art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court,'" 574 U.S. at 301 (quoting *Carlo Bianchi & Co.*, 373 U.S. at 715), and "[t]here is no reason discernible from the text of the [TCA] to think that Congress meant to use the phrase in a different way," *id.* (citing *FAA*, 566 U.S. at 292). The Court notes that "[b]y employing the term 'substantial evidence,' Congress thus invoked" certain principles of administrative law. *See id.* at 301–02. In his concurrence, Justice Alito remarks that "other traditional administrative law principles may also apply" and explains *inter alia* that "the ordinary rule in administrative law is that a court must remand errors to the agency 'except in rare

11

circumstances.'" *Id.* at 308 (Alito, J., concurring) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

The TCA is "premised" on a "system of cooperative federalism." *City of Roswell*, 574 U.S. at 303 (internal quotation marks omitted). "The [TCA's] saving clause makes clear that, other than the enumerated limitations imposed on local governments by the statute itself, 'nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.'" *Id.* at 303 (quoting 47 U.S.C. § 332(c)(7)(A)). In other words, the TCA "generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities like cell phone towers, but imposes 'specific limitations' on that authority." *Id.* at 300 (quoting *Rancho Palos Verdes*, 544 U.S. at 115). The statute therefore has important "federalism implications." *Id.* at 308 (Alito, J., concurring).

"[R]emand may be appropriate where the record reflects a legitimate concern that was not adequately addressed or developed." *Seward Cnty. Bd. of Comm'rs*, 2025 WL 1381508, at *5. The record reflects legitimate concerns here. First, the record shows that citizens were concerned that a cell tower would upset the district's existing character. *See, e.g.*, Filing 16 at 303–04 (AR 302–03) (saying "[a] cell tower would fundamentally change the character of this landscape. Our city is planning a walking and biking trail nearby, a vision that promotes health and community and outdoor recreation, and a cell tower in such close proximity could and would certainly undermine that experience"). This concern overlaps with Gothenburg Zoning Ordinance § 152.076(C)(6), which prohibits the issuance of special use permits that would "change the character of the district." Gothenburg Zoning Ordinance § 152.076(C)(6). Aesthetic concerns also appear in the

12

record, which may be a valid basis for denial of a permit. *Sprint Spectrum, L.P.*, 578 F.3d at 733 (saying "aesthetic concerns can be a valid basis on which to deny [a plaintiff's permit]" in certain circumstances); Filing 16 at 303 (AR 302). Finally, the record shows that citizens held nonspeculative, informed concerns that a cell tower would lead to property value depreciation. Filing 16 at 305 (AR 304) (saying "[b]eyond aesthetics, there are real economic implications. A peer-reviewed study published in Land Economics found that homes within 1,500 feet of a cell tower experience property value declines up to 20 percent, particularly when the tower is visible from the home"). This concern overlaps with Gothenburg Zoning Ordinance § 152.076(C)(4), which provides that a special use permit shall not be granted if the proposed use is found to "depreciate the value of the surrounding structures or property." Gothenburg Zoning Ordinance § 152.076(C)(4). Legitimate concerns are in the record. The City's technical failure to adopt those reasons as its own does not warrant the issuance of permits but remand.

The statute's "federalism implications" are particularly important here where the City's failure was technical and curable. *See Seward Cnty. Bd. of Comm'rs*, 2025 WL 1381508, at *7 ("The County's procedural and technical failure to write those reasons down does not warrant [the plaintiff's] requested relief."). The Council voted unanimously after hearing testimony on the above concerns. The TCA "generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities like cell phone towers. . . ." *City of Roswell*, 574 U.S. at 300 (quoting *Rancho Palos Verdes*, 544 U.S. at 115). The City's failure to adequately address or develop those reasons stated in the record in its letter to The Towers does not require "the strongest of equitable remedies" given the broad authority localities continue to have under the TCA. *See id.* at 300; *Cellco P'ship v. City of Elkhart Bd. of Zoning App.*, No. 3:23-cv-913, 2025 WL 428415, at *4 (N.D. Ind. Feb. 7,

2025) ("Missing the 'in writing' requirement should not every time result in a 'gotcha' moment that triggers the strongest of equitable remedies by means of injunction. . . .").

Given the Council's unanimous vote in denying the application, the important federalism implications at stake, other administrative law principles, and the fact that reasons articulated in the May 20, 2025, meeting and associated minutes could—if more expressly adopted, explained, and adequately supported by substantial evidence—constitute reasons sufficient to deny the permit, the Court remands the matter to the City of Gothenburg for further proceedings. *City of Roswell*, 574 U.S. at 301–02 (explaining that Congress invoked certain administrative law principles in the TCA); *id.* at 308 (Alito, J., concurring) (explaining that "the ordinary rule in administrative law is that a court must remand errors to the agency 'except in rare circumstances'" and that important federalism implications flow from the TCA (quoting *Fla. Power & Light Co.*, 470 U.S. at 744)). In sum, the City must state its reasons "clearly enough to enable judicial review." *Id.* at 303. The Court reiterates the Supreme Court's advice that the locality "write[] a short statement providing its reasons" rather than rely on minutes because, in doing so, "the locality can likely avoid prolonging the litigation—and adding expense to the taxpayers, the companies, and the legal system." *Id.* The best form is for the Council—as a body—or its members individually to clearly state the reasons for denial. *See id.* at 574 U.S. at 303–04.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED:

1.  Plaintiff's Motion for Reversal, Filing 17, is granted;

2.  Defendant's Motion for Affirmance, Filing 19, is denied;

3.  Plaintiff's application is remanded with instructions to issue a written decision consistent with this ruling.

Dated this 7th day of May, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge